UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DENNIS HINES, | * | |
| RICHARD PRESCOTT, JR., and | * | |
| JASON BURNS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:24-cv-11476-IT |
| | * | |
| KEYSTONE RV COMPANY, | * | |
| FOREST RIVER, INC., and | * | |
| WINNEBAGO INDUSTRIES, INC., | * | |
| | | |
| Defendants. | | |

MEMORANDUM & ORDER GRANTING MOTIONS TO DISMISS
FOR FAILURE TO STATE A CLAIM

August 11, 2025

TALWANI, D.J.

In this putative class action, Plaintiffs Dennis Hines, Richard Prescott, Jr., and Jason Burns allege that they purchased defective recreational vehicles ("RVs") from Defendants Forest River, Inc. ("Forest River"), Winnebago Industries, Inc. ("Winnebago"), and Keystone RV Company ("Keystone"). Pending before the court are Defendants Forest River and Keystone's motions to dismiss Plaintiffs' Amended Complaint [Doc. No. 18] pursuant to Fed. R. Civ. P. 12(b)(6). See Forest River Mot. to Dismiss [Doc. No. 28]; Keystone Mot. to Dismiss [Doc. No. 37].[1] For the following reasons, Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. Nos. 18, 28] are GRANTED.

_____

[1] The court addressed in these motions in part along with Winnebago's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 31] in a separate order. See Mem. & Order Denying Motions to Dismiss for Lack of Subject Matter Jurisdiction [Doc. No. 49].

I.    **Factual Background**

The following facts are alleged in Plaintiffs' <u>Amended Complaint</u> [Doc. No. 18]:

A.    *Smoke Alarms*

The smoke alarms that Defendants have installed in Plaintiffs' RVs use ionization smoke sensing technology rather than photoelectric sensing technology. <u>Id.</u> ¶¶ 10, 22. Studies have found that ionization alarms are faster at detecting flaming fires while photoelectric alarms are faster at detecting smoldering fires. <u>Id.</u> ¶ 11. Ionization alarms are more prone to false alarms, such as alarms triggered by cooking smoke or steam from a shower. <u>Id.</u>[2]

B.    *Defendants' Adoption of Fire Protection Standards*

Standards for fire protection devices, including those that govern residential homes, commercial properties, and RVs, are issued by both the National Fire Protection Agency ("NFPA") and United Laboratories ("UL"). <u>Id.</u> ¶¶ 12–13.[3]

Defendants post on their RVs that the vehicles are in compliance with NFPA 72. <u>Id.</u> ¶ 21. NFPA 72 states, in relevant part, that "[s]moke alarms and smoke detectors shall not be installed within an area of exclusion determined by a 10 feet radial distance along a horizontal path from a stationary or fixed cooking appliance, unless listed for installation in a close proximity to cooking appliances." <u>Id.</u> ¶ 17.

---

[2] Plaintiffs refer to these false alarms as "nuisance alarms." <u>Id.</u>

[3] Keystone and Forest River both assert that Plaintiffs' references to these standards are misplaced and have filed various exhibits providing excerpts of these standards. <u>See</u> Forest River Mem. ISO MTD 3, n.1 [Doc. No. 29]; Keystone Mem. ISO MTD 10 [Doc. No. 38]; Exhibits [Doc. Nos. 29-3, 34, 35, 36]. But where it is not obvious whether these documents are from the same period as the standards alleged in the Amended Complaint or are complete, the court declines to consider them on a motion to dismiss and has instead recited the factual background as to these standards as alleged in the Amended Complaint.

Furthermore, Defendants are members of the Recreational Vehicles Industry Association ("RVIA"), and all RVIA members certify that their vehicles comply with NFPA 1192. Id. ¶ 20. NFPA 1192 is a fire standard that applies to recreational vehicles, including the vehicles sold by Defendants and purchased by Plaintiffs. Id. ¶ 14. NFPA 1192 references fire protection standards, including UL 217. Id. ¶ 15.

While UL 217 Section 89.3.1(m) prohibits the installation of smoke alarms within 5 feet of a cooking appliance in a recreational vehicle, regardless of the type of smoke sensing technology used, UL 217 Section 89.3.1(a) specifies minimum installation distances from cooking appliances for different alarm types, including a 10 feet minimum for ionization smoke alarms. Id. ¶¶ 18–19. Section 89.3.1(a) further states that smoke alarms shall be installed in accordance with Section 101.1 of UL 217, and Section 101.1 requires smoke alarms to be installed in accordance with NFPA 72. Id. ¶ 16.

C.    *Plaintiffs' Vehicles*

Plaintiff Dennis Hines owns a 2020 Winnebago Travato 59K Motorhome. Id. ¶ 29. The vehicle has a First Alert (FG250RV) battery powered ionization smoke alarm located three feet, six inches from the propane stove burner used for cooking in the RV. Id. ¶ 30.

Plaintiff Jason Burns owns a 2020 Colman by Dutchman Lantern LT Series M-262BH RV. Id. ¶ 31. The RV is equipped with a First Alert (Model FG250RV) battery powered ionization smoke alarm located seven-and-a-half feet from the propane stove burner used for cooking. Id. ¶¶ 31–32.[4]

---

[4] Plaintiffs do not specify which Defendant manufactured Burns's vehicle, but Keystone asserts without opposition that the only claims against it were brought by Burns, and that Dutchman Manufacturing is an unincorporated division of Keystone. Keystone Mem. ISO MTD 1, 3 n.1. [Doc. No. 38].

Plaintiff Richard Prescott, Jr., owns a 2017 Coachmen Chapparal Lite 295 BHS Fifth Wheel recreational vehicle. Id. ¶ 33. The RV is equipped with a First Alert (Model FG250RV) battery powered ionization smoke alarm located 9 feet from the propane stove burner used for cooking. Id. ¶ 34.[5]

According to Plaintiffs, Defendants have violated standards set forth by NFPA and UL, including NFPA 1192, UL 217, and NFPA 72, by installing ionization alarms within 10 feet of a fixed cooking appliance. Id. ¶ 22. Plaintiffs contend that this defect causes a decrease in the value of the recreational vehicles. Id. ¶ 39.

The insufficient distance between the smoke alarm and the cooking appliance increases the risk of false alarms. Id. ¶ 24. As a result, occupants often disable these alarms to avoid repeated disturbances and may fail to re-enable them, leaving the occupants in risk of fires without adequate protection. Id. ¶ 25.

Plaintiffs Hines, Burnes, and Prescott have disabled the smoke alarms in their vehicles due to false alarms. Id. ¶ 35.

D.    *Warranties*

Both Forest River and Keystone include Limited Warranties as part of their agreements with customers and filed the warranties with this court without objection by Plaintiffs. See Forest River Limited Warranty [Doc. No. 29-1]; Keystone Limited Warranty [Doc. No. 33-1]; Opp'n 13–15 [Doc. No. 42].

---

[5] Plaintiffs do not allege which Defendant manufactured this vehicle, but Forest River states without opposition from Plaintiffs that it manufactures the Coachman RV. See Forest River Mem. ISO MTD 1 [Doc. No. 29].

4

E.    *Class Allegations*

Since 2010, Keystone,[6] Winnebago Industries, and Forest River have sold approximately 2,352,000, 637,000 and 1,911,000 RVs, respectively. Am. Compl. ¶¶ 36–38 [Doc. No. 18].

## II.    Plaintiffs' Claims

Based on the alleged noncompliance with fire regulations, Plaintiffs assert the following causes of action against Defendants:

In Count I, Plaintiffs allege that Defendants were negligent. Id. ¶¶ 46–50. Specifically, Plaintiffs allege that Defendants owed Plaintiffs a duty of reasonable care, that they knew or with reasonable diligence should have known not to install ionization smoke alarms in their RVs within ten feet of a cooking device, and that Plaintiffs suffered damages as the proximate result of Defendants' negligence. Id.

In Count II, Plaintiffs allege a breach of express warranty. Id. ¶¶ 51–56. Specifically, Plaintiffs allege that Defendants expressly warranted that their RVs complied with NFPA 1192, that Plaintiffs relied on Defendants' express warranties, that the RVs were unsafe and defective because they had a smoke alarm installed within 10 feet of a cooking appliance, and that Plaintiffs suffered damages as a result. Id. ¶¶ 53–56.

---

[6] Plaintiffs reference Thor Industries, rather than Keystone, for this figure. Plaintiffs named Thor Industries as a defendant in their original complaint but not in the Amended Complaint, and the court has terminated Thor Industries from this action. See Elec. Order [Doc. No. 20]. Defendants treat Plaintiffs' allegation as directed at Keystone, however, see Keystone Mem. ISO MTD 13, n.8 [Doc. No. 29] (noting that "it doesn't even appear Burns knew who Keystone was prior to initiating this action as Burns incorrectly sued THOR Industries, Inc. and alleged it to be the manufacturer of the RV"); Defs.' Reply 2 n.1 [Doc. No. 48] ("[t]he amended complaint incorrectly refers to Thor Industries Inc.'s RV sales since 2010, rather than those of Keystone."). This court similarly assumes Plaintiffs meant to refer to Keystone.

In Count III, Plaintiffs allege a breach of implied warranty based on the vehicles having a smoke alarm installed within 10 feet of a cooking appliance in violation of NFPA 1192 and UL 72. Id. ¶¶ 57–62.

In Count IV, Plaintiffs allege a breach of the implied warranty of merchantability based on the vehicles having a smoke alarm installed within 10 feet of a cooking appliance in violation of NFPA 1192 and UL 72. Id. ¶¶ 63–68.

In Count VI,[7] Plaintiffs allege misrepresentation based on Defendants' representation that their recreational vehicles were in compliance with the NFPA standards, including NFPA 72 and 1192, when in fact the vehicles were not due to the Defendants installing ionization smoke alarms within 10 feet of a fixed cooking appliance in their recreational vehicles. Id. ¶¶ 69–74.

In assessing the sufficiency of the complaint, "an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The court must then determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Guadalupe-Báez, 819 F.3d at 514 (citations omitted).

A. *Negligence*

"To state a claim for negligence under Massachusetts law, one must allege that "the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the

---

[7] The Amended Complaint does not include a Count V.

damage." Doe v. Stonehill Coll., Inc., 55 F.4th 302, 338 (1st Cir. 2022) (quoting Jupin v. Kask, 447 Mass. 141, 146 (2006)).

Plaintiffs have failed to allege the necessary causal relation. Any relationship between Defendants' installation of smoke alarms and any increased risk of fire after Plaintiffs found their smoke alarms annoying and removed them is far too attenuated to satisfy the causation prong. An increased risk of fire thus cannot be the basis of Plaintiffs' negligence claim, as Plaintiffs have not adequately alleged that Defendants' actions caused such a risk.

Plaintiffs also allege that their vehicles are worth less due to non-compliance with fire industry standards. See Am. Compl. ¶ 39 [Doc. No. 18]. But that Defendants' actions allegedly caused Plaintiffs harm in the form of overpayment cannot sustain a negligence claim, as such an injury is a pure economic loss. "In the context of ordinary negligence claims in tort actions, the [Massachusetts] Supreme Judicial Court has held that 'purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.'" Cummings v. HPG Intern., Inc., 244 F.3d 16, 24 (1st Cir. 2001) (quoting FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395, 613 N.E.2d 902 (Mass. 1993)).

Plaintiffs contend that there is an exception to the economic loss doctrine "where a plaintiff may recover if there has been an intentional or negligent misrepresentation and the action has resulted in a loss that is economic in nature, even if there is no privity between the parties, as long as the design professional knew or reasonably could foresee a third person would rely on his services." Opp'n 9 [Doc. No. 42] (citing Nota Const. Corp. v. Keyes Associates, Inc., 45 Mass. App. Ct. 15, 19–20 (1998); Superior Kitchen Designs, Inc. v. Valspar Industries (U.S.A.), Inc., 263 F. Supp. 2d 140, 147 (D. Mass. 2003)). These cases concern negligent

misrepresentation claims, however, and are unavailing as to Plaintiffs' ordinary negligence claim.

Therefore, Keystone and Forest River's <u>Motions to Dismiss</u> [Doc. Nos. 28, 37] are granted as to the negligence claim.

B.    *Misrepresentation*

To state a claim for misrepresentation, plaintiffs must allege reliance on the misrepresentation. <u>Blacksmith Invs., LLC. v. Cives Steel Co.</u>, 228 F.R.D. 66, 72 (D. Mass. 2005). Specifically, plaintiffs "must allege and prove that the defendant made a false representation of a material fact . . . and that the plaintiff relied upon the representation as true and acted upon it to his damage." <u>Barrett Assoc., Inc. v. Aronson</u>, 346 Mass. 150, 152, 190 N.E.2d 867 (1963) (internal quotations omitted).

"Under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud—and for this purpose, misrepresentation is considered a species of fraud[]—must state with particularity <u>the circumstances</u> constituting fraud." <u>McKenna v. Wells Fargo Bank, N.A.</u>, 693 F.3d 207, 218 (1st Cir. 2012) (internal quotations omitted) (emphasis added); Fed. R. Civ. P. 9(b). The pleading must "specify the statements that the plaintiff contends were fraudulent" and why they were fraudulent, <u>Suna v. Bailey Corp.</u>, 107 F.3d 64, 68 (1st Cir. 1997) (quoting <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1127–28 (1st Cir. 1994)), and otherwise "allege with particularity the who, what, when, where, and how of the fraud," <u>D'Agostino v. ev3, Inc.</u>, 845 F.3d 1, 10 (1st Cir. 2016).

Several interrelated problems plague Plaintiffs' misrepresentation claim. Most generally, Plaintiffs do not state their claim with the requisite particularity. Plaintiffs disagree, contending that "the Complaint alleges the statement was made by the Defendants (the who); on the label attached to the vehicle (the where); the label states that the vehicle is in compliance with NFPA

1192 (the what); the Defendants made the statement when they installed the label (the when); and the vehicles are actually not in compliance with NFPA 1192 (how the fraud)." Opp'n 11–12 [Doc. No. 42]. But these allegations omit "the when" of when the misrepresentation was made to Plaintiffs.

Relatedly, Plaintiffs fail to adequately allege reliance on the purported misrepresentation, a necessary element to a misrepresentation claim. Plaintiffs do allege that "Defendants intended to induce reliance [on false representations that their recreational vehicles are in compliance with the NFPA standards, including NFPA 72 and 1192] by those who would foreseeably purchase the recreational vehicles" and that "[t]his representation was a substantial factor in inducing reliance," see Am. Compl. ¶¶ 72–73 [Doc. No. 18], but they do not allege that Plaintiffs relied on Defendants' label when they purchased their RVs. Plaintiffs contend instead that "[w]hether there is actual reliance is usually a question for the fact finder," Opp'n 12 [Doc. No. 42], but this ignores Plaintiffs' failure to even allege reliance. That failure is fatal to their misrepresentation claim.

Nor is the pleading problem solved by inferring that Plaintiffs did rely on Defendants' representations when they purchased their RVs. Plaintiff Prescott alleges that he owns a 2017 vehicle, while Plaintiff Burns alleges that he owns a 2020 vehicle. Am. Compl. ¶¶ 31, 33 [Doc. No. 18]. But if the court treats 2017 and 2020 as the dates of purchase—and of Plaintiffs' reliance—Plaintiffs' claims are time-barred, as common-law claims for intentional and negligent misrepresentation have "consistently" been held to "sound in tort [and] are governed by the three-year limitation period provided by [M].G.L. c. 260, § 2A." Passatempo v. McMenimen, 461 Mass. 279, 293, 960 N.E.2d 275 (2012).

Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if "the facts establishing the defense are clear on the face of the plaintiff's pleadings." Trans–Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2009). A dismissal for timeliness is warranted under Rule 12(b)(6) when "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (citations omitted).

Plaintiffs do not challenge the inference that the vehicle years correspond to the date of purchase. However, Plaintiffs argue that the discovery rule applies and that Plaintiffs' misrepresentation claims did not accrue until Plaintiffs learned of the statements' falsity. See Opp'n 12 [Doc. No. 42]. "The [discovery] rule, which operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured, may arise in three circumstances: where a misrepresentation concerns a fact that was 'inherently unknowable' to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive." Albrecht v. Clifford, 436 Mass. 706, 714, 767 N.E.2d 42 (2002) (quoting Patsos v. First Albany Corp., 433 Mass. 323, 328, 741 N.E.2d 841 (2001)). The rule concerns the discovery of facts and not whether a claim is viable in a legal sense; "accrual under the discovery rule is not delayed until a plaintiff learns that he was legally harmed." Harrington v. Costello, 467 Mass. 720, 729, 7 N.E.2d 449 (2014) (internal citations omitted).

No fact that was the subject of the alleged misrepresentation was "inherently unknowable" to the Plaintiffs. Plaintiffs certainly knew the distance between the smoke alarms and the stoves at the time of purchase and do not contend otherwise. Plaintiffs also knew that Defendants represented that that distance comported with specific fire industry standards, and

Plaintiffs do not contend that those industry standards were unknowable. Plaintiffs' theory of harm is that frequent nuisance alarms caused them to disable their smoke alarms. On that theory, Plaintiffs' injury should have been apparent shortly after the time of purchase and was not, as Plaintiffs suggest, a hidden defect discovered only years after purchase.

Accordingly, Plaintiffs' misrepresentation claim is dismissed as to Defendants Keystone and Forest River.

C.    *Breach of Express and Implied Warranties*

1.    Plaintiffs' Express and Implied Warranty Claims are Time-Barred.

Keystone's warranty includes a provision stating that "any and all claims, controversies, and causes of action arising out of or relating to the [] limited warranties . . . will be governed by the laws of the state of Indiana, including its statute of limitations[.]" Keystone Limited Warranty 12 [Doc. No. 33-1].[8] Forest River claims that its limited warranty also contains a choice-of-law provision specifying that the laws of Indiana should apply, but the warranty filed with this court contains no such provision. See Forest River Mem. ISO MTD 6 [Doc. No. 29]; Forest River Limited Warranty [Doc. No. 29-1]. However, regardless of whether Massachusetts or Indiana law applies, Plaintiffs' express and implied warranty claims against both Keystone and Forest River are time barred.

Keystone's and Forest River's warranties shorten the limitations period for both express and implied warranty claims. See Forest River Limited Warranty [Doc. No. 29-1] (shortening the warranty to "a period of one (1) year from the date of purchase" and stating that "no action to enforce express or implied warranties shall be commenced later than ninety (90) days after the

---

[8] The court may consider the express warranties filed by Defendants Keystone and Forest River where the Amended Complaint specifically references these warranties. See Lydon v. Local 103, Intern., Broth. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014).

expiration of this period"); Keystone Limited Warranty 8 [Doc. No. 33-1] (specifying one-year period for limited base warranty); id. at 12 (specifying that "any action to enforce any portion of [this warranty] or any implied warranty, must be commenced within six (6) months after expiration of the above stated respective limited warranty periods").

The "[Massachusetts] Legislature has accepted the premise of a contractually shortened limitations period." Creative Playthings Franchising, Corp. v. Reiser, 463 Mass. 758, 762, 978 N.E.2d 765 (Mass. 2012). Under Massachusetts law, the parties may "reduce the period of limitation to not less than one year but may not extend it." M.G.L.A. 106 § 2-725(1). Indiana law also permits contracting parties to shorten the limitation period to not less than one year, but parties may not extend it. Ind. Code § 26-1-2-725(1); Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd., 134 N.E.3d 370, 376 (Ind. 2019).

As discussed above, Plaintiffs make no allegation about when they purchased their vehicles or discovered any defects and do not dispute Defendants' inference that Plaintiffs purchased their vehicles more than three years before filing the present suit. See supra Part II.B. Thus, Plaintiffs have failed to allege sufficient factual material to plausibly suggest that their claims fall within the statute of limitations period set forth in the Keystone and Forest River limited warranties.

Plaintiffs maintain that "[u]nder both Massachusetts and Indiana law, [a] warranty cannot disclaim the discovery rule[,]" and suggest that the discovery rule should bar dismissal based on a failure to file within the limitations period. Opp'n 15 [Doc. No. 42]. But even accepting Plaintiffs' contention that a warranty cannot disclaim the discovery rule, Plaintiffs' invocation of the discovery rule fails for the reasons stated above. See supra Part II.B (explaining Plaintiffs'

failure to properly make allegations supporting application of the discovery rule). Therefore, Plaintiffs' warranty claims are time-barred.

> 2. Plaintiffs' Express and Implied Warranty Claims Fail Due to Plaintiffs' Failure to Provide Notice.

Plaintiffs' warranty claims additionally fail for failure to provide notice as required by the limited warranties. Forest River's limited warranty states that "[n]o action to enforce express or implied warranties shall be commenced without prior written notice to the manufacturer and/or warrantor at the address listed above of the alleged defect or nonconformity or the authorized repair facility's failed repair attempt[.]" Forest River Limited Warranty [Doc. No. 29-1]. And Keystone's limited warranty states that "[i]f within the stated limited warranty periods . . . a defect in materials or workmanship is found to exist that is not excluded from coverage, whether under the Limited Base Warranty or the Limited Structural Warranty, Keystone's sole and exclusive obligation will be to repair the defect." Keystone Limited Warranty 10 [Doc. No. 33-1].

Plaintiffs make no allegation that they presented their RVs to Forest River or Keystone for repair. Instead, Plaintiffs argue that notice is not required under either Indiana or Massachusetts law. See Opp'n 13 [Doc. No. 42]. However, the cases Plaintiffs cite in support of that argument merely set forth general rules concerning notice for warranty claims; Plaintiffs raise no argument concerning the notice requirements explicitly specified in Defendants' limited warranties.[9] Accordingly, Plaintiffs warranty claims fail due to Plaintiffs' failure to allege that they either provided notice or presented their vehicles for repair.

---

[9] Keystone additionally states that its express warranty exempts "equipment and appliances" from coverage and maintains that a smoke alarm falls under this exemption. See Keystone Mem. ISO MTD 19 [Doc. No. 38]. Forest River similarly maintains that its warranty explicitly excludes coverage for "equipment and appliances." Forest River Mem. ISO MTD 7 [Doc. No.

Therefore, Plaintiffs' express and implied warranty claims fail as to Defendants Forest River and Keystone.[10]

**III.    Conclusion**

For the foregoing reasons, Forest River and Keystone's <u>Motions to Dismiss</u> [Doc. Nos. 28, 37] for failure to state a claim are GRANTED.

IT IS SO ORDERED.

August 11, 2025                              /s/ Indira Talwani
                                            United States District Judge

---

29]. The court need not address whether a smoke alarm falls under the category of "equipment and appliances" where Plaintiffs' warranty claims fail on other grounds.

[10] The court need not reach Defendants' additional arguments concerning the warranties.